Judgment rendered November 20, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,137-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IDA HAWKINS, CHARLOTTE                    Plaintiffs-Appellants
HAWKINS, AND CHRISTOPHER
HAWKINS INDIVIDUALLY AND
IN THEIR REPRESENTATIVE
CAPACITIES OF THE MINOR
CHILDREN S.L., E.L., C.H., AND
C.H.


                            versus


THE SCHUMACHER GROUP OF                   Defendants-Appellees
LOUISIANA, INC., CLINICAL
PARTNERS-LOUISIANA, PLLC,
ANDRE LEBLANC MEDICAL
CONSULTANTS, LLC, MOREHOUSE
PARISH HOSPITAL SERVICE DISTRICT
d/b/a MOREHOUSE GENERAL HOSPITAL,
ANDRE MICHEL LEBLANC, CRNA,
DR. DANIEL UMOH, DR. JANOS GUOTH,
LINDA RICHARD, CRT, BRIDGET
HUMPHREY MAJOR, LPN, FLETA STELL, RN,
ADAM CLAMPIT, RN, AND
TERESA HANKINS, RN

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Morehouse, Louisiana
Trial Court No. 2015189

Honorable Robert W. Kostelka, Judge (*Pro Tempore*)

* * * * *

SANGISETTY LAW FIRM, LLC                    Counsel for Appellants
By:  Ravi K. Sangisetty
     Parker N. Hutchinson

COWAN LAW FIRM                              Counsel for Appellees
By:  Thomas C. Cowan
     Philip E. Reso
     Sheri S. Gilbert


* * * * *


Before PITMAN, McCALLUM, and THOMPSON, JJ.

**THOMPSON, J.**

This appeal arises from the granting of a motion for summary judgment in favor of the defendants, Clinical Partners-Louisiana, PLLC, Emcare, Inc., Emcare Holdings, Inc., and Envision Healthcare Corporation (hereinafter "Anesthesia Defendants"), and against plaintiffs for injuries sustained by Charlotte Hawkins (hereinafter "Hawkins") from repeated incorrect intubation of Hawkins while a patient at Morehouse General Hospital. For the reasons more fully detailed below, we reverse the granting of summary judgment and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

Providing anesthesia services in rural hospitals, which do not have a large enough population base to include a local anesthesiologist, is oftentimes accomplished through various intermediaries and agreements necessary to serve citizens in the region. In this instance Morehouse General Hospital and its patients were served through an agreement between Indigent Care Services of Northeast Louisiana, Inc., and Clinical Partners-Louisiana, PLLC, to staff and manage the anesthesia services program and protocols. Clinical Partners-Louisiana, PLLC, would in turn contract with health care providers to deliver those services to patients.

On June 25, 2012, Hawkins was admitted to Morehouse General Hospital to undergo a C-section. The C-section was performed without complication by Dr. James Gouth, OB/GYN (hereinafter "Dr. Gouth"). Defendant, Andre LeBlanc, CRNA (hereinafter "LeBlanc"), was tasked with performing Hawkins' anesthesia services related to and subsequent to her C-section.

Following her C-section, Hawkins became agitated and LeBlanc administered intravenous Benadryl to Hawkins. After the administration of the Benadryl, Hawkins experienced respiratory depression and became unresponsive. LeBlanc intubated Hawkins and while doing so he improperly placed the tube in her esophagus causing air to be pumped into Hawkins' stomach instead of her lungs. LeBlanc "called a code" and Dr. Guoth and Dr. Daniel Umoh (hereinafter "Dr. Umoh"), the attending ER physician, responded. Dr. Umoh attempted to resuscitate Hawkins. Dr. Guoth discovered that she was improperly intubated. LeBlanc again attempted to properly intubate Hawkins, but in this second failed attempt he placed the tube too far down her bronchus causing only her right lung to receive oxygen. After a third attempt by LeBlanc, and several minutes after the first failed attempt, Hawkins was finally correctly intubated. As a result of the improper intubation, Hawkins suffered a severe hypoxic brain injury which has caused her significant and permanent damage. Hawkins has now been interdicted as a result of her injuries. The plaintiffs in this matter include Hawkins and her family members.

Hawkins' family (hereinafter "Plaintiffs") filed an original petition, followed by a first, second, and third supplemental petition for damages against the following defendants: Morehouse Parish Hospital Service District d/b/a Morehouse General Hospital ("Morehouse Hospital"); Dr. James Guoth, the physician who performed the C-section; Linda Richard, CRT, and Bridget Humphrey Major, LPN, Fleta Stell, RN, Adam Clampit, RN, and Teresa Hankins, RN, the nurses and medical staff on duty the day of Hawkins' injury (hereinafter collectively referred to as "the Nurses");

Andre LeBlanc, personally and his limited liability company, Andre LeBlanc Medical Consultants, LLC, as he was the Certified Registered Nurse Anesthetist ("CRNA") who intubated Hawkins and was responsible for her care; Dr. Daniel Umoh, the emergency room physician who responded to the code; the Schumacher Group of Louisiana; Clinical Partners-Louisiana, PLLC, and its related corporate entities Emcare, Inc., Emcare Holdings, Inc., Envision Healthcare Corporation, and Iasis Healthcare, LLC, the corporate entity Plaintiffs asserted had contracted or assumed the contract with Anesthesia Defendants to establish and staff Morehouse with anesthesia services among other responsibilities.

The Nurses named as defendants in the petition were dismissed by motion and order for partial dismissal dated August 24, 2015. Defendants, Schumacher Group of Louisiana, Inc. and Dr. Daniel Umoh, were dismissed on February 23, 2016, via an unopposed motion for summary judgment. Defendant Indigent Care Services of Northeast Louisiana was dismissed from the suit on April 10, 2018, via an unopposed motion for summary judgment and Iasis Healthcare, LLC, was added because it was the parent company of Indigent Care Services. Defendants Morehouse and Dr. Guoth were dismissed on August 10, 2018, via a motion for summary judgment wherein the district court found no liability for either. Defendants, Andre LeBlanc, CRNA and Andre LeBlanc Medical Consultants, as well as unnamed defendants Liberty Surplus (LeBlanc's malpractice insurer) and the Patient's Compensation Fund, reached a settlement agreement with Plaintiffs and were accordingly dismissed from the suit as a product of that settlement. The only remaining defendants in the suit are: (1) Clinical

3

Partners-Louisiana, PLLC, and its parent or associated entities Emcare, Inc., Emcare Holdings, Inc., and Envision Healthcare Corporation ("Anesthesia Defendants"); and (2) Iasis Healthcare, LLC.

On November 9, 2017, Anesthesia Defendants filed their first motion for summary judgment alleging no liability for any acts, including those of LeBlanc, because the agreement between Anesthesia Defendants and LeBlanc defined LeBlanc as an independent contractor, and that, in accordance with such an agreement, Anesthesia Defendants had no right to control the delivery of LeBlanc's anesthesia services at Morehouse. Anesthesia Defendants claimed that LeBlanc was never supervised, trained, or directed by Anesthesia Defendants regarding delivery of anesthesia services. Therefore, Anesthesia Defendants claimed that they were neither vicariously liable nor were they independently negligent with regard to Hawkins' medical care.

On November 29, 2017, Plaintiffs filed an opposition to Anesthesia Defendants' motion for summary judgment and on January 5, 2018, Anesthesia Defendants' motion for summary judgment was granted in part and denied in part. The district court held that LeBlanc was an independent contractor for Anesthesia Defendants and that Anesthesia Defendants could not be held liable for the actions of Andre LeBlanc or Andre LeBlanc Medical Consultants. The claims against LeBlanc, his company, Liberty Surplus, and the Patient's Compensation Fund were subsequently dismissed due to settlement between the parties. Summary judgment was denied as to the remaining claims against Anesthesia Defendants which duties and

4

responsibilities were created by either contract or applicable standard established by the Code of Federal Regulation.

On March 9, 2018, Anesthesia Defendants filed a second motion for summary judgment citing the following two reasons for entry:

(1) Plaintiffs were not third party beneficiaries to the contract between Clinical Partners and Indigent Care of Northeast Louisiana; and

(2) 42 C.F.R. 482 does not create a private cause of action for Plaintiffs to recover from Defendants.

After a hearing, which included discussion in detail between the district judge and both counsel, the district court granted the motion for summary judgment and dismissed the claims against Anesthesia Defendants with prejudice. Plaintiffs filed a motion for new trial which was denied on December 28, 2018. This appeal followed.

## PLAINTIFFS' ASSIGNMENTS OF ERROR

(1) The district court erred in granting Defendants' motion for summary judgment on issues not raised as grounds for dismissal in their motion for summary judgment;

(2) The district court erred in allowing Defendants to argue under an entirely different theory from that stated in their motion and in resolving questions of fact related to duty of care; and

(3) The district court erred in granting summary judgment before Plaintiffs were able to conduct court-ordered discovery on fact issues relevant to the scope of Defendants' duty of care.

## STANDARD OF REVIEW

De novo review is required when an appellate court considers rulings on motions for summary judgment. *Bank of New York Mellon v. Smith*, 15-0530 (La. 10/14/15), 180 So. 3d 1238, 1243.

5

## DISCUSSION

In its third amended petition, Plaintiffs allege that Clinical Partners-Louisiana, PLLC, is liable because Hawkins' injuries and damages were proximately and legally caused by the following acts of negligence:

- Failure to hire qualified personnel;

- Failure to train personnel;

- Failure to perform other administrative functions, including distribution and maintenance of adequate safety protocols, such as those related to proper intubation techniques and drug safety;

- Failure to supervise, train, and/or monitor personnel, including but not limited to LeBlanc and the code team;

- Failure to develop and/or implement adequate policies and procedures to competently address proper intubation of patients;

- Failure to properly staff Morehouse with adequately trained personnel to deliver anesthesia services;

- Failure to enforce the policies, protocols, and procedures of Morehouse;

- Failure to timely assess Mrs. Hawkins;

- Failure to exercise the appropriate standard of care for facilities in intubating patients;

- Vicarious liability for the negligence of Andre LeBlanc, Andre LeBlanc Medical Consultants, LLC, Adam Clampit, RN, and Teresa Hankins, RN;

- Failure to ensure that LeBlanc was practicing anesthesia under the sponsorship of a medical doctor or otherwise ensure anesthesia services were delivered at the hospital in accordance with applicable federal and state laws/regulations; and

- Failure to fulfill its contractual duties to deliver anesthesia services in a safe and competent manner at Morehouse General Hospital.

Additionally, Plaintiffs claim that Emcare, Inc., and its parent corporations, Emcare Holdings Inc. and Envision Healthcare Corp., are liable because

Clinical Partners had no employees or office of its own, but was an alter ego of and operated as a single business enterprise with Emcare, Inc., and its parent corporations. Therefore, Plaintiffs assert in their third amended petition that Emcare, Inc., Emcare Holdings Inc., and Envision Healthcare Corp. are also liable unto them for the acts of negligence detailed above.

In its oral reasons for ruling, the following exchange occurred between counsel for the parties and the district court:

BY THE COURT:

Yes. Uh, they were, their role in this was to recruit someone like Mr. LeBlanc, Nurse LeBlanc, someone who is qualified to provide these services as a CRNA and have this contract with the hospital to do so. And they did that. And as far as the supervision of the CRNA, we had Dr. Guoth who was there, who was actually performing the caesarean section. And uh, he checked on his patients. Everything was fine. No signs of distress. He walks outside. Um to do what doctors do. Dictate their notes. And he was 60 steps away, but apparently not very far. He was within sight of the room. As soon as the code was called, as is custom and proper procedure, the ER doctor responded. They both went in at the same time. Uh, roughly at the same time. Dr. Guoth is not a trained anesthesiologist. He, uh, he his deposition was clear on that. He was there to consult in the event there was some need to consult with him in an area beyond the CRNA's field of expertise and knowledge. **Um, if there was negligence here, it was the negligence of the CRNA. There's no duty of these two corporate entities, two or three.**

BY MR. COWAN:

Four.

BY THE COURT:

**Four corporate entities to provide supervision. Their responsibility was to provide a CRNA that was qualified and they did so. Um, there was no additional duty imposed upon them to provide supervision.** Their own supervision. That was left to the, whoever that particular—in this case Nurse LeBlanc—would have been under the supervision or working with Dr. Guoth. It could have been any other. It could have been another procedure or surgery procedure. It would have

been whoever the attending surgeon was. When the code was called that would have been in the hands of the ER doctor. **Uh, in this case there's no duty on behalf of these corporate entities to provide any more services than what they've done and what they've contracted to do at the hospital to provide a qualified CRNA which they did.** And therefore since there is no duty and summary judgment is appropriate, Court will grant summary judgment as prayed for.

BY MR. COWAN:

We'll draft a summary judgment for the Court's consideration and get it to counsel.

BY THE COURT:

Alright. Did you want to, Mr. Sangisetty?

BY MR. SANGISETTY:

Well, I mean, I'm a little. Obviously we would like to offer, file and introduce the record of the matter for purposes of appeal or writ. I'm a little surprised, your Honor, that you know, **it seems like you were finding some facts associated with uh, the contract**. I mean, I'm not going to ask you to, well, I would ask you to reconsider in that we articulated, you know, at the last Motion for Summary Judgment breaches and standard of care by anesthesiologist and corporate compliance first in that creates a question of fact of whether there's a duty. **There was other, other parts of that contract other than them providing the CRNA. It was providing limited medical director. Running the anesthesia quality assurance program. Providing audits. Those things were never done. And that was, that's what the facts have shown in this case. And um, you know, at this juncture, that legal question of do they have some obligation, yes, if those obligations affect my client, yes. And the failure to fulfill those obligations affect my client, yes**. Um, that's what our argument at the last motion for summary judgment. To say today that the contract only provides that they were only required to provide CRNA's is a finding of fact which is not consistent with the contract. But, I mean, that's our, that's been our position from the beginning.

BY THE COURT:

Well, it appears after reviewing this that the, that if there was an act of negligence here it involved—and there may well have been—it was on the part of Nurse LeBlanc for improper intubation. Um, so I'll go back and review and if I, you know, if

8

I think I got it wrong then I can reconsider, but I don't think, I mean, that's my thought on it. Because I don't think I got it wrong. But I'll be glad to go back and give it another look. And I understand your argument. **But uh, but I don't think that the duty extends to these corporate entities. I don't think that's the way the system is set up.**

(emphasis added)

We disagree with the determination by the trial court that the duties of Anesthesia Defendants were as limited as only providing a CRNA. The agreement with Anesthesia Defendants outlines significant other responsibilities.

The appellate court must use the same criteria that governed the district court's determination of whether summary judgment was appropriate: (1) whether there exists a genuine issue of material fact and (2) whether or not the mover is entitled to judgment as a matter of law. *Clinton v. Reigel By-Products, Inc.*, 42,497 (La. App. 2 Cir. 09/19/07), 965 So. 2d 1006, 1008, *writ not cons.*, 07-2239 (La. 02/15/08), 976 So. 2d 168. "Whether a legal duty exists is dependent upon the relationship between the parties." *Lichti v. Schumpert Medical Center*, 32,620 (La. App. 2 Cir. 01/26/00), 750 So. 2d 419, 423, *writ denied*, 00-0623 (La. 04/20/00), 760 So. 2d 349). "Questions of negligence are generally inappropriate for disposition by summary judgment." *Mixon v. Davis*, 31,725 (La. App. 2 Cir. 03/31/99), 732 So. 2d 628, 631. "However, a defendant is entitled to dismissal by means of [summary judgment], if, after the opposing party has had an adequate opportunity to develop evidence, the record is completely devoid of any suggested basis for the defendant's liability." *Id*. In determining whether to grant a motion for summary judgment, the court must take the pleadings, depositions, answers to interrogatories, and

admissions, together with the affidavits, if any, and determine whether those items show that there is no genuine issue as to any material fact. *Catahoula Parish Sch. Bd. v. Louisiana Machinery Rentals, LLC*, 12-2504 (La. 10/15/13), 124 So. 3d 1065, 1071.

In this case, the district court determined that Anesthesia Defendants owed no duty to Hawkins except to provide a qualified CRNA during her procedure. De novo review of the record shows that there are genuine issues of material fact that render summary judgment under La. C.C.P. art. 966(A) improper. Although the trial court's oral reasons for granting summary judgment appear to find that the Anesthesia Defendants had no duty to Hawkins other than to provide a qualified CRNA, the actual agreement between Clinical Partners and Indigent Care Services, as well as responses to requests for admission by Morehouse Hospital, Indigent Care, and Iasis Healthcare, and the deposition testimony of Andre LeBlanc and Sean Richardson (corporate representative for Clinical Partners) reveal that Anesthesia Defendants' duty extended far beyond simply providing a competent CRNA.

To determine the responsibilities of Anesthesia Defendants we look first to the "Agreement for Professional Anesthesia Services" (hereinafter "the Agreement") signed on August 1, 2011, between Indigent Care Services and Clinical Partners. In Article 2.3 of the Agreement, Clinical Partners was to perform all of the following non-exclusive functions:

> A. Periodic review of a sample of CRNA medical charts according to the compliance program adopted by [Clinical Partners]. Such reviews were to be conducted in an effort to help insure that ASA standards of care are being utilized by CRNAs.

B. Periodic telephone consultations at the request of CRNAs and/or surgeons providing services at [Morehouse Hospital], if the individual designated by [Clinical Partners] to provide the limited Medical Director services is available at the time of such needs.

C. Oversight of the Anesthesia Quality Assurance Program, including policy and procedure review.

Additionally, Exhibit "A" of the Agreement outlines the following functions that Clinical Partners was to perform:

A. **Description of Services**. [Clinical Partners] shall provide the Services for the patients at Morehouse General Hospital ("Hospital") as defined by the Agreement.

    (1) **CRNA Services**. [Clinical Partners] shall provide the CRNAs required by anesthesia services to Hospital's patients according to the service schedule outlined in paragraph "3" of this Exhibit "A." CRNAs shall in accordance with the Agreement be available as on-call providers and as such may be contacted by Hospital by telephone, and be able to arrive at Hospital within thirty (30) minutes of the time called.

    (2) **COMPLIANCE WITH 42 CFR § 482.52**. [Clinical Partners] agrees that it will provide anesthesia services in a well organized manner under the sponsorship of a qualified doctor of medicine or osteopathy and will otherwise insure that such services are rendered in compliance with the applicable Condition of Participation promulgated by CMS.

Hawkins propounded written discovery to Morehouse Hospital and in its responses to Plaintiffs' requests for admission, Morehouse Hospital admitted the following:

**REQUEST FOR ADMISSION NO. 1:**

Please admit that, at Morehouse General Hospital in 2012, the anesthesia department and the professional anesthesia services associated therewith was the responsibility of Indigent Care Services of Northeast Louisiana, Inc. pursuant to a contract between the State of Louisiana and Indigent Care Services.

11

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Admitted.

**REQUEST FOR ADMISSION NO. 2:**

Please admit that, at Morehouse General Hospital in 2012, the anesthesia department and the professional anesthesia services associated therewith was the responsibility of Clinical Partners-Louisiana, PLLC pursuant to a contract between Clinical Partners and Indigent Care Services.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Admitted.

**REQUEST FOR ADMISSION NO. 3.:**

Please admit that in 2012 the hospital policies at MGH with respect to equipping of the PACU with the necessary items for intubation was the responsibility of Clinical Partners.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Admitted.

**REQUEST FOR ADMISSION NO. 4:**

Please admit that in 2012 the hospital policies at MGH with respect to equipping of the PACU with necessary items for monitoring the respiratory rate of patients was the responsibility of Clinical Partners.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Admitted.

**REQUEST FOR ADMISSION NO. 5:**

Please admit that Clinical Partners was responsible for ensuring that the anesthesia services were delivered at MGH in under the sponsorship [of a] qualified medical doctor or doctor of osteopathy.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Admitted.

12

**REQUEST FOR ADMISSION NO. 6:**

Please admit that in 2012, Clinical Partners was responsible for the compliance with 42 C.F.R. § 482.52 at MGH.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Admitted.

. . . .

**REQUEST FOR ADMISSION NO. 10:**

Please admit that Clinical Partners was responsible for updating and implementing the anesthesia department policies at MGH in 2012.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Admitted.

. . . .

**REQUEST FOR ADMISSION NO. 12:**

Please admit that no one from Clinical Partners or Emcare communicated to the medical staff at MGH that it was the operating surgeon's responsibility to supervise the CRNAs at any time before Charlotte Hawkins coded on June 15, 2012.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Admitted.

**REQUEST FOR ADMISSION NO. 13:**

Please admit that in 2012 at MGH, it was Clinical Partners' responsibility to ensure that the operating suite was properly staffed and equipped to deliver anesthesia services.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Admitted.

. . . .

In its responses to Plaintiffs' requests for admission, Indigent Care

Services and Iasis Healthcare, LLC admitted the following:

13

**REQUEST FOR ADMISSION NO. 1:**

Please admit that in 2012 at MGH, it was Clinical Partners' and/or Emcare, Inc.'s responsibility to ensure compliance with 42 C.F.R. § 482.52.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

ICSNL and IASIS were not responsible for ensuring compliance with 42 C.F.R. Section 482.52 at Morehouse General Hospital. ICSNL and IASIS admit Clinical Partners, in Exhibit A of its contract with ICSNL, agreed, as part of Clinical Partners' duties, that Clinical Partners will provide anesthesia services in compliance with 42 CFR Section 482.52. ICSNL cannot speak to what responsibility other parties may have had to ensure compliance.

**REQUEST FOR ADMISSION NO. 2:**

Please admit in 2012 at MGH, that it was Clinical Partners' and/or Emcare, Inc.'s responsibility to ensure that the PACU was properly staffed and equipped to deliver anesthesia services.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Request for Admission No. 2 is admitted insofar as Clinical Partners is concerned, based on the contract between ICSNL and Clinical Partners. See the following Articles of the contract: 1.2; 1.7; 2.3 (A)-(C); and Exhibit A(2). ICSNL cannot speak to what responsibility other parties may have had.

**REQUEST FOR ADMISSION NO. 3:**

Please admit that in 2012 at MGH, it was Clinical Partners' and/or Emcare, Inc.'s responsibility to ensure that the operating suite was properly staffed and equipped to deliver anesthesia services.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

See Response to Request for Admission No. 2.

**REQUEST FOR ADMISSION NO. 4:**

Please admit that you took no action in equipping, staffing, or managing the anesthesia services at Morehouse General Hospital from 2011 through 2012.

14

## RESPONSE TO REQUEST FOR ADMISSION NO. 4:

. . . IASIS has no involvement in the provision of anesthesia services at Morehouse General Hospital. IASIS is the parent company of ICSNL. ICSNL had no involvement in the equipping, staffing, or managing of anesthesia services at Morehouse General Hospital, other than to pay for those services pursuant to a contract with Clinical Partners. Pursuant to the contract with Clinical Partners, Clinical Partners who "is in the business of providing anesthesia management services to hospitals" was to equip, staff, and manage the anesthesia services at Morehouse General Hospital. See Exhibit 1, Agreement for Professional Anesthesia Services, Page 1, "Recitals"(D). Clinical Partners did this in consultation with the hospital and its' contracted CRNAs.

## REQUEST FOR ADMISSION NO. 5:

Please admit that you took no action to ensure that anesthesia services at Morehouse General Hospital from 2011 through 2012 was appropriately staffed, managed, or equipped.

## RESPONSE TO REQUEST FOR ADMISSION NO. 5:

. . . ICSNL contracted with Clinical Partners, an anesthesia management service company, to provide anesthesia services. See Exhibit 1. The contract required that Clinical Partners abide by "any and all applicable federal and/or state statutes, rules, and regulations applicable to the performance of services under this agreement." See Article 1.2 of Exhibit 1.

The contract also required that "all services shall be provided in accordance with the applicable standards for reasonable and prudent care for CRNAs…and in accordance with all federal, state and local laws relating to or regulating the practice of anesthesia delivery." *Id.* See Article 1.2.

Exhibit A of the contract (Exhibit 1) required that Clinical Partners provide "anesthesia in a well organized manner under the sponsorship of a qualified doctor of medicine or osteopathy and will otherwise ensure that such services are rendered in compliance with the applicable Condition of Participation promulgated by CMS", which is 42 C.F.R. § 482.52.

. . . .

In his deposition, LeBlanc was asked whether he was supervised in any way by Clinical Partners and his response was "no." The corporate

15

representative for Clinical Partners, Sean Richardson, stated in his deposition that he "couldn't say" whether Dr. Guoth (the physician who performed Hawkins' C-section) had agreed to sponsor or supervise LeBlanc.

A review of the record and Clinical Partners' own agreement to provide anesthesia services to Morehouse Hospital clearly establishes a duty existed to ensure the supervision of LeBlanc.   Clinical Partners was also required under that contract to provide many other services related to the administration of anesthesia services to patients at Morehouse Hospital, which according to the responses to requests for admission above were not provided.

In support of their motion for summary judgment, Anesthesia Defendants attached only their contract with Indigent Care agreeing to provide anesthesia services to Morehouse.  In reviewing that contract and other pertinent parts of the record, it is clear that Anesthesia Defendants did not meet their burden of proving that no duty was owed to Hawkins as to any of Plaintiffs' 12 cited claims of negligence.  It is clear that, under their own contract, Anesthesia Defendants were required to do, at least, the following:

- Ensure that LeBlanc was being supervised by either a medical doctor or a doctor of osteopathy;

- Review a sample of CRNA medical charts according to the compliance program;

- Provide limited Medical Director services;

- Oversee the Anesthesia Quality Assurance Program, including policy and procedure review;

- Equip the PACU with the necessary items for intubation and monitoring respiratory rate of patients; and

- Ensure compliance with 42 C.F.R. § 482.52.

There is no evidence in the record that Anesthesia Defendants did any of the aforementioned tasks that they were to perform under their own contract. Therefore, the district court erred when it granted Anesthesia Defendants' motion for summary judgment on the basis that Anesthesia Defendants were required to do nothing more than simply provide a competent CRNA. As we have reversed due to the existence of genuine issues of material fact as to the duty owed by Anesthesia Defendants, we pretermit discussion of other assignments of error by Appellant.

## CONCLUSION

For the reasons expressed above, the judgment of the district court is REVERSED. Costs are assessed to Appellees.

**REVERSED AND REMANDED for further proceedings consistent with this opinion.**